**THIS ORDER IS SIGNED AND ENTERED.**

**Dated: June 8, 2023**



**Hon. Rachel M. Blise**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Gary L Peterson and Betty L Peterson,

Debtors.

Case No. 22-11787-rmb

Chapter 13

**DECISION AND ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN**

On February 2, 2023, the debtors filed an amended chapter 13 plan (the "Plan"). ECF No. 22. The Plan includes the following Non-Standard Provision in Section VIII:

> State Bank Financial has a mortgage on the homestead with a balance in the estimated amount of $47,265.62. The secured claim shall be amortized over 84 months at 5% interest for a monthly payment of $668.05. Prior to confirmation, the Debtors shall pay adequate protection to State Bank Financial in the monthly amount of $618.13. Upon confirmation, the Debtors shall continue to pay the monthly amount of $668.05. The monthly payment will be through the Chapter 13 Trustee. The Debtors will make the payment directly to State Bank Financial upon completion of the Chapter 13 Plan.

*Id.* at 2. State Bank Financial filed a secured claim in the amount of $47,265.62. Claim No. 5. The parties agree that under the applicable loan documents the full amount of the claim was due before the petition date.

Under the Plan, the debtors propose to reamortize the loan so that State Bank Financial's secured claim will be paid over a period of 84 months, meaning that payments will continue for

24 months after the 60-month plan term ends. The question before the Court[1] is whether this plan term is permissible.

As proponents of their chapter 13 plan, the debtors bear the burden to establish that the plan satisfies the requirements of the Bankruptcy Code. *See In re Olsen*, 604 B.R. 790, 796 (Bankr. W.D. Wis. 2019) ("A chapter 13 plan must meet the requirements of section 1325(a) to be confirmed. The debtor has the burden of proving compliance with these requirements by a preponderance of the evidence.").

Section 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in a real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). State Bank Financial's secured claim is secured only by the debtor's principal residence, so under § 1322(b)(2), the debtors generally would not be permitted to modify the claim at all. However, because the last payment under the original payment terms was due before the petition date, the claim falls under an exception to this prohibition on modification. Section 1322(c) provides:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law . . . in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5).

11 U.S.C. § 1322(c)(2). It is generally understood that this section allows a chapter 13 plan to modify a claim secured only by the debtors' principal residence as long as the last payment under the original payment term is due before the end of the plan term.

---

[1] No party in interest objected to the Plan. The Court raised the issue sua sponte following the Supreme Court's instruction in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 n.14 (2010).

The debtors argue that they can modify State Bank Financial's claim to amortize the loan over 84 months and beyond the plan term because the Plan complies with § 1325(a)(5). As relevant here, § 1325(a)(5) provides that "the court shall confirm a plan if . . . with respect to each allowed secured claim provided for by the plan . . . the holder of such claim has accepted the plan." 11 U.S.C. § 1325(a)(5)(A). State Bank Financial has expressly consented to the treatment of its claim under the Plan. Therefore, the debtors argue, § 1322(c)(2) provides that the claim can be modified as the debtors propose because § 1325(a)(5) is satisfied. Essentially, the debtors' position is that if a secured creditor consents to the modification proposed under § 1322(c)(2), then Court should not examine the substance of the treatment to ensure that a plan complies with the other provisions in the Bankruptcy Code. The Court is not persuaded.

A secured creditor's acceptance of its treatment in a chapter 13 plan is not "a complete license for debtors to do whatever they wish in proposing repayment plans." *In re Foley*, 606 B.R. 790, 795 (Bankr. E.D. Wis. 2019). "The Code contains many other limitations on chapter 13 plans [beyond § 1325(a)(5)], and the court retains an independent duty to make sure all plans comply with those confirmation requirements." *Id.* The Supreme Court confirmed this requirement in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), noting that § 1325(a) "*requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." *Id.* at 277 n.14 (emphasis in original). Therefore, even though State Bank Financial has accepted the treatment of its claim in the Plan, the Court must nevertheless determine whether the treatment complies with the Bankruptcy Code.

Section 1325(a)(1) provides that, as a requirement to confirmation, a chapter 13 plan must "compl[y] with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). For below median income debtors like the debtors here,

3

§ 1322(d) provides: "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2).[2] Thus, the Court cannot confirm a plan that contemplates payments over a period of more than 60 months. The question is whether the payments to State Bank Financial in months 61 to 84 of the re-amortized loan schedule are payments for purposes of § 1322(d).

To answer this question, the Court turns to another section addressing "payments" made pursuant to a chapter 13 plan. Under § 1328(a), for the debtors to receive a discharge at the end of the case, they must complete "all payments under the plan." 11 U.S.C. § 1328(a). It is an accepted principle that payments made to a chapter 13 trustee for distribution to creditors are payments under a plan. But some plans provide that debtors will make payments directly to a creditor, rather than through the chapter 13 trustee. These direct payments are generally, though not always, made to creditors whose claims are treated under § 1322(b)(5). That section provides that a chapter 13 plan can "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). These "cure and maintain" claims are often mortgage claims. Any existing default on the claim, often called an "arrearage," is usually paid by the chapter 13 trustee, and in many jurisdictions the debtor can elect to make the ongoing "maintenance" payments directly to the mortgage creditor.

Sometimes a debtor successfully makes all payments to the chapter 13 trustee but does not make all of the maintenance payments to the mortgage creditor during the plan term. The

---

[2] Similarly, for above median income debtors, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d).

4

vast majority of courts have held that the direct maintenance payments are "payments under the plan," and that a debtor is not eligible for discharge if those payments are not made. *See In re Coughlin*, 568 B.R. 461, 470 (Bankr. E.D.N.Y. 2017) ("post-petition mortgage payments are 'payments under the plan' even if being paid directly by the debtor"); *see also*, *e.g.*, *In re Kessler*, 655 F. App'x 242, 244 (5th Cir. 2016) ("post-petition mortgage payments, whether paid directly or through a trustee, are paid 'under the plan' when the plan also provides for the curing of pre-petition arrears on the debt"); *In re Thornton*, 572 B.R. 738, 741 (Bankr. W.D. Mo. 2017) ("courts addressing this issue have consistently held that in a cure-and-maintain situation, the ongoing mortgage payments are made 'under the plan,' regardless of whether they are being made directly by the debtor to the mortgageholder"); *In re Bethe*, No. 11-25388, 2017 WL 3994813, *2-3 (Bankr. E.D. Wis. Sept. 8, 2017) (adopting reasoning in *Coughlin*).

One case addressing this principle is particularly instructive here. *In re Mrdutt*, 600 B.R. 72 (B.A.P. 9th Cir. 2019). In *Mrdutt*, the Bankruptcy Appellate Panel for the Ninth Circuit joined *Coughlin* and the other courts in holding that direct payments to a mortgage creditor are "payments under the plan." *Id.* at 81. The debtors did not make the direct, post-petition maintenance payments to their mortgage creditor. After the 60th month, the debtors submitted a modified plan providing that they would not maintain post-petition mortgage payments as the original confirmed plan had provided but that they would instead surrender the property to the mortgage creditor. The court held that the surrender was a "payment" under the plan. The surrender would occur in the 67th month after plan payments commenced, meaning that the modified plan provided for payments beyond the 60-month maximum. The modified plan did not satisfy the requirements of the Bankruptcy Code and could not be approved. *Id.* at 84.

5

The Court finds the reasoning of these cases persuasive and therefore joins the majority of courts in holding direct payments made to a creditor whose claim is provided for by the plan are "payments under the plan" for purposes of § 1328(a). Such direct payments are also necessarily "payments" for purposes of § 1322(d). Therefore, a chapter 13 plan must provide that all payments, including all payments made by the debtor directly to a creditor and all payments made to the chapter 13 trustee for distribution to creditors, will be completed within a maximum term of 60 months.[3]

Here, the Plan provides that the trustee will distribute payments to State Bank Financial in months 1 through 60 of the reamortized term, and that the debtors will pay State Bank Financial directly in months 61 through 84. Those direct payments are "payments" for purposes of § 1322(d) because it is the Plan requires the debtors to make the payments and there is no separate agreement between the parties that governs the payment terms after the Plan ends. As the court held in *Mrdutt*, a chapter 13 plan cannot provide for direct payments to a creditor after the 60th month.

The Fifth Circuit addressed this very issue in *In re Pierrotti*, 645 F.3d 277 (5th Cir. 2011). In that case, the Internal Revenue Service held a claim secured by several of the debtor's assets, and the debtor's plan proposed to pay the claim in equal monthly installments over a

---

[3] There are at least two circumstances that warrant mention so the Court's holding is not misunderstood. First, payments that continue beyond the plan term on a claim that is treated as a "cure and maintain" claim under § 1322(b)(5) are not payments under a plan because the parties' original agreement will govern the terms of those payments after the plan is complete. Second, payments to secured creditors whose payments are not provided for under the plan are not payments under the plan. There is "no provision of the Bankruptcy Code requires that a chapter 13 plan provide for all allowed secured claims," *In re Limon*, 616 B.R. 380, 381 (Bankr. E.D. Wis. 2020), and it is well accepted that a secured claim passes through bankruptcy unaffected if the claim is not treated in the plan, *see, e.g.*, *In re Williams*, 622 B.R. 54, 58 (Bankr. N.D. Ill. 2020).

Neither of these situations applies here. The Plan does not treat State Bank Financial's claim as a "cure and maintain" claim under § 1322(b)(5). It could not, because the last payment was due before the final plan payment will be due. And, of course, State Bank Financial was not left out of the Plan; its claim is expressly provided for under the Plan.

period of 15 years. *Id.* at 279. The debtor argued that the plan could modify the IRS's claim (*i.e.*, extend the payment term) under § 1322(b)(2) and then, pursuant to § 1322(b)(5), maintain the payments on the modified claim. *Id.* The Fifth Circuit held that this treatment was impermissible because § 1322(b)(5) applies only to debts with original payment terms that extend beyond the plan and the IRS debt was presently due and owing. *Id.* at 280.

> If we endorsed [the debtor's] reading of § 1322(b), then § 1322(d) . . . would never apply to a secured claim modifiable under § 1322(b)(2) because the debtor could always "modify" the length of time for payments on the existing debt and then claim to "maintain" payments according to that modification under § 1322(b)(5). We decline to interpret § 1322(b) in a way that would render § 1322(d) null and void as to such modified claims.

*Id.*

Unlike this case, the creditor in *Pierrotti* objected to the treatment of its claim. But the Fifth Circuit's holding did not rest on the fact that the IRS had not accepted the plan. The IRS argued that the plan did not comply with § 1325(a)(5)(B)(ii) because the IRS would not receive the full value of its claim during the plan term, but the Fifth Circuit never mentioned that argument in its analysis. The decision was based solely on § 1322(d), which does not permit plan payments to extend beyond five years.

Other courts have similarly held that a chapter 13 plan may not modify a claim under § 1322(b)(2) *and* extend the payment term beyond five years. *See In re Enewally*, 368 F.3d 1165, 1172 (9th Cir. 2004) ("a chapter 13 debtor may not invoke both a modification of a secured creditor's claim under § 1322(b)(2) and the right to 'cure and maintain' beyond the plan term as authorized under § 1322(b)(5)"); *JPMorgan Chase Bank, Nat'l Ass'n v. Galaske*, 476 B.R. 405, 412 (D. Vt. 2012) ("[T]he Bankruptcy Court's modification of the monthly payment and the interest rate for Chase's secured claim, coupled with the extension of a modified payment amount and interest rate beyond the five year life of the Plan, was an impermissible mixing of

7

the distinct requirements of § 1322(d) and § 1322(b)(5)."); *In re Russell*, 458 B.R. 731, 738-39 (Bankr. E.D. Va. 2010) ("While . . . modifications are permitted under § 1322(b)(2), the term of the modified loan cannot extend beyond the five-year maximum set by § 1322(d)(1)(C) and (d)(2)(C), Bankruptcy Code, since it is only by proceeding under the cure-and-maintain provisions of Section 1322(b)(5) that the debtor can take advantage of a payment term extending beyond the term of the plan.").

The debtors argue that this case is different because State Bank Financial's claim is modified under § 1322(c)(2), and not under § 1322(b)(2). The distinction does not make a difference. Section 1322(b)(2) prohibits debtors from modifying claims that are secured only by their principal residence. Section 1322(c) is an exception to this prohibition that allows certain claims secured only by a debtor's principal residence to be modified "notwithstanding subsection (b)(2)." 11 U.S.C. § 1322(c)(2). Such claims can be modified "pursuant to § 1325(a)(5)," meaning that the treatment of the claim must comply with § 1325(a)(5). *See id.* But nothing in § 1322(c)(2) indicates that Congress intended to allow plans that modify claims under § 1322(c)(2) to evade the other requirements in chapter 13, including the requirement that plan payments must be completed within five years.

Moreover, the debtor's theory that matured loans can be amortized over any period in a chapter 13 plan as long as the creditor consents will create issues at discharge. Under § 1328(a), only long-term, cure-and-maintain secured debts treated under § 1322(b)(5) are not subject discharge. A claim like State Bank Financial's would be subject to discharge. As one court explained:

> [T]o permit a plan to pay a modified debt over a period longer than the plan term would create an anomaly with respect to the debtor's discharge at the completion of plan payments. Long-term debts treated under the cure-and-maintain provisions of § 1322(b)(5) are excluded from the

8

> discharge that a debtor receives upon completing plan payments in a chapter 13 case. § 1328(a)(1), Bankruptcy Code. But a long-term debt treated other than under § 1322(b)(5) would not be excluded from discharge, thereby effectively converting the BAC/Mellon note into non-recourse debt, so that in the event of a future default, the noteholder would be limited to its *in rem* remedies against the collateral, contrary to what would appear to be Congress's intent that payment obligations not paid during the plan but extending beyond the end of the plan not be discharged.

*Russell*, 458 B.R. at 739.

The debtors complain that not allowing the reamortization of State Bank Financial's claim will effectively preclude chapter 13 debtors from saving their houses where a mortgage claim matures before or during the plan term because most debtors do not have the means to pay a mortgage claim in full within five years. While this policy argument certainly has some force, the Court cannot override the express requirements of the Bankruptcy Code in favor of applying its preferred policy outcome.

Other debtors have addressed this problem modifying the secured claim under a separate instrument, rather than under the plan. *See, e.g.*, *In re Wilcox*, 438 B.R. 428, 429-30 (Bankr. D. Colo. 2010). In *Wilcox*, the debtor and the mortgage creditor entered into a loan modification that modified the amount and payment terms of the claim and provided that the loan would be deemed current and that the debtors would maintain payments during the plan term. The trustee objected to confirmation, arguing that the debtors' agreement with the creditor was an improper attempt to modify a secured claim on a principal residence in violation of § 1322(b)(2). The court overruled the objection. The court held that the plan did not modify the creditor's claim; the parties had done that outside the plan, and the plan did "nothing more than recite the terms of the parties' separate modification agreement in the same way that another plan might recite the terms of an unmodified mortgage." *Id.* at 431. And because the mortgage was modified outside the plan, the creditor "voluntarily and knowingly waived any protection of its interests afforded

9

by § 1322(b)(2)." *Id.* Had the parties agreed to modify the claim using the plan rather than a separate instrument, the plan would be subject to the antimodification provision in § 1322(b)(2).

Here, unlike in *Wilcox*, the debtors want to use the Plan to modify State Bank Financial's claim; the parties have not entered into a separate instrument extending the amortization period. If they had, then the debtors might have been able to treat State Bank Financial's claim as a "cure and maintain" claim under § 1322(b)(5). The debtors cannot use § 1322(c)(2) to re-write the terms of State Bank Financial's loan and extend payment of the claim beyond completion of the Plan.

In sum, the debtors' proposal to pay State Bank Financial's claim over a term of 84 months violates the requirement in § 1322(d) that plan payments cannot extend beyond five years. The Plan is therefore not confirmable pursuant to § 1325(a)(1) because it does not comply with the provisions in chapter 13.

## ORDER

Accordingly, IT IS HEREBY ORDERED that confirmation of the debtors' amended chapter 13 plan filed on February 2, 2023 (ECF No. 22) is DENIED.

IT IS FURTHER ORDERED that the debtors are granted leave to file an amended chapter 13 plan on or before **June 30, 2023**.

# # #